Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
9107 Wilshire Blvd., Suite 450
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile:  310/209-2348

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAN ORMESHER,<br><br>          Plaintiff,<br><br>     vs.<br><br>LIVONGO HEALTH INC., CHRISTOPHER BISCHOFF, SANDRA FENWICK, KAREN L. DANIEL, PHILIP D. GREEN, HEMANT TANEJA, GLEN E. TULLMAN, and ZANE BURKE,<br><br>          Defendants. | Case No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Ryan Ormesher ("Plaintiff"), on behalf of himself and all others similarly situated, upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

- 1 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

## NATURE OF THE ACTION

1. This is an action brought by Plaintiff against Livongo Health, Inc. ("Livongo" or the "Company") and the members of Livongo's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Livongo will be acquired by Teladoc Health, Inc. ("Teladoc") through Teladoc's wholly owned subsidiary Tempranillo Merger Sub, Inc. ("Merger Sub") (the "Proposed Transaction").

2. On August 5, 2020, Livongo and Teladoc issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated August 5, 2020 (the "Merger Agreement") to sell Livongo to Teladoc. Under the terms of the Merger Agreement, each holder of Livongo common stock will receive (i) 0.5920 of a share of Teladoc common stock, and (ii) $4.24 in cash for each share of Livongo common stock they own (the "Merger Consideration"). The Proposed Transaction is valued at approximately $18.5 billion.

3. On September 15, 2020, Livongo filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Livongo stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the Company's and Teladoc's financial projections as well as the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Morgan Stanley & Co. LLC ("Morgan Stanley"); and (ii) Morgan Stanley's potential conflicts of interest. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. In short, unless remedied, Livongo's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making

a sufficiently informed voting or appraisal decision on the Proposed Transaction. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6. The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because: (i) the Company's principal executive offices are located in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; and (iii) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Livongo.

9. Defendant Livongo is a Delaware corporation, with its principal executive offices located at 150 West Evelyn Avenue, Suite 150, Mountain View, California 94041. The Company's team of data scientists aggregate and interpret substantial amounts of health data and information to create actionable, personalized and timely health signals delivered to its members. Livongo's common stock trades on the Nasdaq Global Select Market under the ticker symbol "LVGO."

10. Defendant Christopher Bischoff ("Bischoff") has been a director of the Company since April 2018.

11. Defendant Sandra Fenwick ("Fenwick") has been a director of the Company since April 2019.

12. Defendant Karen L. Daniel ("Daniel") has been a director of the Company since May 2019.

13. Defendant Philip D. Green ("Green") is Lead Independent Director and has been a director of the Company since September 2016.

14. Defendant Hemant Taneja ("Taneja") has been a director of the Company since April 2014.

15. Defendant Glen E. Tullman ("Tullman"), a founder of the Company, has served as Executive Chairman of the Board since February 2019, and has been a director of the Company since August 2013. Defendant Tullman previously served as Livongo's Chief Executive Officer ("CEO") from September 2014 to February 2019.

16. Defendant Zane Burke ("Burke") has been Livongo's CEO since February 2019 and a director of the Company since April 2019.

17. Defendants identified in paragraphs 10-16 are referred to herein as the "Board" or the "Individual Defendants."

**OTHER RELEVANT ENTITIES**

18. Teladoc is a Delaware corporation, with its principal executive offices located at 2 Manhattanville Road, Suite 203, Purchase, New York 10577. Teladoc is the largest global leader of comprehensive virtual healthcare services, providing virtual access to high-quality care and expertise, with a portfolio of services and solutions covering more than 450 medical subspecialties from non-urgent, episodic needs like flu and upper respiratory infections, to chronic, complicated medical

conditions like cancer and congestive heart failure. Teladoc completed approximately 4.1 million telehealth visits in 2019 for patients around the globe. Teladoc's common stock trades on the New York Stock Exchange under the ticker symbol "TDOC."

19. Merger Sub is a Delaware corporation and a wholly owned subsidiary of Teladoc.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

20. Headquartered in Mountain View, California, Livongo is pioneering a new category in healthcare, called Applied Health Signals. The Company has created a unified platform that provides smart, cellular-connected devices, supplies, informed coaching, and data science-enabled insights and facilitates access to medications across multiple chronic conditions to help members lead better lives. Livongo currently offers Livongo for Diabetes, Livongo for Hypertension, Livongo for Prediabetes and Weight Management, and Livongo for Behavioral Health by myStrength. Livongo creates consumer-first experiences with high member satisfaction, measurable, sustainable health outcomes, and more cost-effective care for members and clients. This approach is leading to better clinical and financial outcomes while also creating a better experience for people with chronic conditions and their care team of family, friends, and medical professionals.

21. On August 5, 2020, Livongo announced its second quarter 2020 financial results, including total revenue of $91.9 million, representing a 125% increase from $40.9 million in the second quarter of 2019. GAAP gross margin in the second quarter was 76.6%, compared to 70.8% in the second quarter of 2019. Non-GAAP net income for the quarter was $12.5 million, compared to net loss of $7.5 million in the second quarter of 2019. Adjusted EBITDA was $13.3 million, compared to a loss of $7 million in the second quarter of 2019. The Company counted over 410,000 enrolled Livongo for Diabetes members in the second quarter of 2020, up 113% year-over-year. Defendant Burke commented on the results, stating:

> Livongo entered 2020 with significant momentum and our strong results continued during the second quarter. Innovative employers and health plans are choosing Livongo due to our leading Consumer Directed Virtual Care model and our ability to deliver significant clinical and financial improvements through a one-to-many approach. As we experience the further adoption of virtual health and remote monitoring technologies as the new standard of care, Livongo continues to build on its leadership position.

**The Proposed Transaction**

22.     On August 5, 2020, Livongo and Teladoc issued a joint press release announcing the Proposed Transaction. The press release states, in relevant part:

> PURCHASE, NY and MOUNTAIN VIEW, Calif., Aug. 05, 2020 -- Teladoc Health (TDOC), the global leader in virtual care, and Livongo (LVGO), the leading Applied Health Signals company – today announced that they have entered into a definitive merger agreement. This merger represents a transformational opportunity to improve the delivery, access and experience of healthcare for consumers around the world. The highly complementary organizations will combine to create substantial value across the healthcare ecosystem, enabling clients everywhere to offer high quality, personalized, technology-enabled longitudinal care that improves outcomes and lowers costs across the full spectrum of health.
>
> Under the terms of the agreement, which has been unanimously approved by the Board of Directors of each company, each share of Livongo will be exchanged for 0.5920x shares of Teladoc Health plus cash consideration of $11.33 for each Livongo share, representing a value of $18.5 billion based on the closing price of Teladoc Health shares as of August 4, 2020. Upon completion of the merger, existing Teladoc Health shareholders will own approximately 58 percent and existing Livongo shareholders will own approximately 42 percent of the combined company.
>
> The combination of Teladoc Health and Livongo creates a global leader in consumer centered virtual care. The company will have expected 2020 pro forma revenue of approximately $1.3 billion, representing year over year pro forma growth of 85 percent. Demonstrating the power of the combined platform and the scalability of the data driven and virtual ethos, the combined company is expected to have pro forma Adjusted EBITDA of over $120 million for 2020.
>
> "This merger firmly establishes Teladoc Health at the forefront of the next-generation of healthcare," said Jason Gorevic, CEO of Teladoc Health. "Livongo is a world-class innovator we deeply admire and has demonstrated success improving the lives of people living with chronic conditions. Together, we will further transform the healthcare experience from preventive care to the most complex cases, bringing 'whole person' health to consumers and greater value to our clients and shareholders as a result."

"This highly strategic combination will create the leader in consumer-centered virtual care and provides a unique opportunity to further accelerate the growth of our data-driven member platform and experience," said Glen Tullman, Livongo Founder and Executive Chairman.  "By expanding the reach of Livongo's pioneering Applied Health Signals platform and building on Teladoc Health's end-to-end virtual care platform, we'll empower more people to live better and healthier lives.  This transaction recognizes Livongo's significant progress and will enable Livongo shareholders to benefit from long-term upside as the combined company is positioned to serve an even larger addressable market with a truly unmatched offering."

**Strategic and financial benefits of the combination**

- **The combination joins two highly complementary companies to create an unmatched, comprehensive platform for virtual healthcare delivery.**  By bringing together leaders in virtual health and chronic condition management, the merger combines comprehensive clinical expertise with a rich technology and data-driven experience; prevention and chronic condition management with acute and specialty care; behavior change expertise with data science; global footprint with products meeting global need; access with innovation and two of the fastest growing companies in health technology.

- **Combining clinical expertise with deeper, more comprehensive consumer health insights to deliver the highest quality care and improve outcomes.** The transaction combines Teladoc Health's broad integrated services across virtual care with Livongo's data-driven approach to providing actionable, personalized, and timely health signals to create a comprehensive virtual healthcare delivery system.  The combined company's platform will feature the full range of health support – from AI+AI engine-driven "nudges" and health coaches to therapists and board-certified physicians and the world's leading specialists – available anytime, anywhere to ensure the right care is always delivered.

- **Focusing on prevention as a critical lever for reimagining healthcare delivery.**  Together, Teladoc Health and Livongo will empower consumers to proactively manage their wellbeing with the help of a single, comprehensive partner across the full spectrum of health, whether they are at-risk of, or living with, chronic conditions or need acute care.  By tapping into data and care anytime, anywhere, consumers will have real-time information and guidance to stay healthy and avoid the unchecked progression of illness.

- **Joining two leaders in consumer behavior change, bringing millions more consumers into virtual care and building even deeper consumer and provider relationships.**  Teladoc Health's flywheel approach to continued member engagement combined with Livongo's proven track record of using data science to build consumer trust will accelerate the combined company's development of longitudinal consumer and provider relationships.

- **Expanding Teladoc Health's portfolio and footprint with Livongo's leadership in addressing underpenetrated and underserved chronic condition populations.** Teladoc Health's global reach, including 70 million customers in the United States, and significant access to high growth segments in that market (e.g., Medicare and Medicaid) give Livongo a stronger platform to reach millions of new consumers, at risk of, or living with chronic disease.

- **Complementary cultures and operating philosophies that put a premium on health equity.** Teladoc Health has long focused on virtual care as the "great equalizer" expanding access to underserved communities facing negative social determinants of health. With Livongo's focus on chronic conditions, which disproportionately impacts underserved communities, the combined company will be positioned to make meaningful progress on addressing long-standing disparities.

- **Significant shareholder value creation and revenue acceleration opportunities.** The combined company is positioned to execute quantified opportunities to drive revenue synergies of $100 million by the end of the second year following the close, reaching $500 million on a run rate basis by 2025. These opportunities include increased cross-selling and penetration into each company's client base. They also include accelerating Livongo's international expansion through Teladoc Health's existing footprint, improving combined company member retention rates and driving more efficient enrollment. In addition to the quantified synergies, the combination offers significant unquantified synergies by enabling new care models and next generation solution opportunities. As a result of efficiencies, the combined company is expected to achieve cost synergies of $60 million by the end of the second year following the close, which can be reinvested to drive topline growth and margin expansion.

**Leadership & Governance**

Jason Gorevic, current CEO of Teladoc Health, will be the CEO of the combined company. Led by Teladoc Health chairman, David Snow, the newly combined Teladoc Health Board of Directors will be composed of eight members of the Teladoc Health Board and five members of the Livongo Board.

**Additional Transaction Details**

The transaction is expected to close by the end of Q4 2020, subject to regulatory and Teladoc Health and Livongo shareholder approvals and other customary closing conditions. The newly combined company will be called Teladoc Health and will be headquartered in Purchase, New York.

**Insiders' Interests in the Proposed Transaction**

23.     Livongo insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Livongo.

24.     Notably several Company insiders have secured positions for themselves with the combined company.  Specifically, defendants Bischoff, Daniel, Fenwick, Taneja, and Tullman have already been selected to serve on the board of directors of the combined company upon completion of the Proposed Transaction.

25.     Livongo insiders stand to reap substantial financial benefits for securing the deal with Teladoc.  If they are terminated in connection with the Proposed Transaction – and with respect to defendants Tullman and Burke, Jennifer Schneider and Lee Shapiro, whether or not they are terminated – Livongo's named executive officers will receive substantial cash severance payments in the form of golden parachute compensation as set forth in the following table:

| Name | Cash ($)(2) | Equity ($)(3) | Perquisites/ Benefits(4) ($) | Tax Reimbursement(5) ($) | Total ($) |
|---|---|---|---|---|---|
| Glen E. Tullman | $1,115,625 | $89,524,002 | $6,321 | $ — | $90,645,948 |
| Zane Burke | 292,500 | 85,784,699 | — | 9,570,729 | 95,647,928 |
| Jennifer Schneider | 281,250 | 33,365,763 | — | — | 33,647,013 |
| Lee Shapiro | 270,000 | 95,014,020 | — | — | 95,284,020 |
| James Pursley(1) | 150,000 | 14,035,522 | — | — | 14,185,522 |

**The Proxy Statement Contains Material Misstatements or Omissions**

26.     The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Livongo's stockholders.  The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

27.     Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the Company's and Teladoc's financial projections as well as the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Morgan Stanley; and (ii) Morgan Stanley's potential conflicts of interest.

***Material Omissions Concerning the Company's and Teladoc's Financial Projections and Morgan Stanley's Financial Analyses***

28.     The Proxy Statement omits material information regarding the Company's and Teladoc's financial projections.

29.     In connection with its financial analyses of both Livongo and Teladoc, Morgan Stanley utilized street case projections for each of Livongo and Teladoc. The Proxy Statement fails, however, to disclose the street case projections for each of Livongo and Teladoc.

30.     Additionally, in connection with its discounted cash flow analyses of both Livongo and Teladoc, Morgan Stanley utilized estimates for net operating loss and tax credit carryforwards. The Proxy Statement fails, however, to disclose the estimates for net operating loss and tax credit carryforwards for each of the Livongo Street Case, Livongo Plan A projections, Livongo Plan B projections, Teladoc Street case, Teladoc Case 1 forecasts and Teladoc Case 2 forecasts.

31.     Moreover, with respect to Teladoc's financial projections, the Proxy Statement sets forth:

> At Teladoc's direction, representatives of Lazard provided representatives of Morgan Stanley financial projections through 2022 prepared by Teladoc management and identified as "Case 1" and "Case 2" in this proxy statement/prospectus. The main difference between Case 1 and Case 2 is that Case 2 assumes a higher revenue growth rate. Lazard informed Morgan Stanley that at Teladoc's direction Lazard would be using Case 1 for purposes of Lazard's analyses in connection with its opinion and that the Teladoc board of directors would be primarily relying on Case 1 in connection with its evaluation of the transaction. Based on the foregoing projections, Teladoc's financial results for calendar years 2023 through 2030 were extrapolated by Livongo

and projections of Teladoc's unlevered free cash flows for the third and fourth quarters of calendar year 2020 and for calendar years 2021 through 2030 were generated by Livongo, which were reviewed and approved by Livongo management for Morgan Stanley's use in its financial analyses. The foregoing financial projections were presented to and reviewed by the Livongo board of directors in connection with its evaluation of the transaction and approved for use by Morgan Stanley in connection with its financial analyses.

Proxy Statement at 124. The Proxy Statement fails, however, to disclose (i) projected revenue, adjusted EBITDA and unlevered free cash flow for the period of the third quarter of 2020E to 2022E for the Case 2 forecasts; and (ii) unlevered free cash flows for each of the calendar years 2023 through 2030 for both the Case 1 and Case 2 forecasts.

32. In addition, for each of the Livongo Street Case, Livongo Plan A projections, Livongo Plan B projections, Teladoc Street case, Teladoc Case 1 forecasts and Teladoc Case 2 forecasts, the Proxy Statement fails to disclose the line items underlying unlevered free cash flows.

33. Furthermore, according to the Proxy Statement, "[i]n connection with rendering its opinion, Morgan Stanley . . . [r]eviewed the pro forma impact of the merger on Teladoc's earnings per share, cash flow, consolidated capitalization and certain financial ratios[.]" Proxy Statement at 107. Yet, the Proxy Statement fails to disclose the pro forma impact of the merger on Teladoc's earnings per share, cash flow, consolidated capitalization and certain financial ratios.

34. The Proxy Statement also omits material information regarding Morgan Stanley's financial analyses.

35. The Proxy Statement describes Morgan Stanley's fairness opinion and the various valuation analyses it performed in support of its opinion. However, the description of Morgan Stanley's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Livongo's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on

Morgan Stanley's fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal.

36. With respect to Morgan Stanley's *Livongo Discounted Equity Value Analysis* and *Teladoc Discounted Equity Value Analysis*, the Proxy Statement fails to disclose the inputs and assumptions underlying the discount rates of 9.4% and 7.5%, respectively.

37. With respect to Morgan Stanley's *Livongo Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) estimates for net operating loss and tax credit carryforwards; (ii) the implied terminal values resulting from the analysis; (iii) quantification of the inputs and assumptions underlying the discount rate range of 8.3% to 10.2%; and (iv) Livongo's net debt.

38. With respect to Morgan Stanley's *Teladoc Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) estimates for net operating loss and tax credit carryforwards; (ii) the implied terminal values resulting from the analysis; (iii) quantification of the inputs and assumptions underlying the discount rate range of 7.3% to 8.2%; and (iv) Teladoc's net debt.

39. With respect to Morgan Stanley's *Precedent Transaction Multiples Analysis*, the Proxy Statement fails to disclose the multiples and financial metrics for each of the transactions analyzed.

40. With respect to Morgan Stanley's *Analyst Price Targets* analysis, the Proxy Statement fails to disclose the individual price targets for Livongo and Teladoc and the sources thereof.

41. Without such undisclosed information, Livongo stockholders cannot evaluate for themselves whether the financial analyses performed by Morgan Stanley were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction. In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully

evaluate the extent to which Morgan Stanley's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction.

42. The omission of this material information renders the statements in the "Opinion of Livongo's Financial Advisor" and "Livongo Unaudited Financial Projections" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning Morgan Stanley's Potential Conflicts of Interest*

43. The Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by Morgan Stanley.

44. The Proxy Statement sets forth, "Livongo may, in its sole discretion, also pay Morgan Stanley an additional discretionary fee of up to approximately $11 million contingent upon, and subject to, the consummation of the merger." *Id*. at 119. The Proxy Statement, however, fails to disclose the agreed parameters for such additional discretionary fee, the criteria Morgan Stanley needs to satisfy to receive the additional fee, and whether the Company anticipates paying Morgan Stanley the additional fee.

45. Additionally, the Proxy Statement fails to disclose whether Morgan Stanley has performed any services for Teladoc in the two years preceding the date of its fairness opinion, and, if so, the amount of compensation received in connection with such services.

46. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives

47. The omission of this material information renders the statements in the "Opinion of Livongo's Financial Advisor" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

48. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Livongo will be unable to make an informed voting or appraisal decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

49. Plaintiff repeats all previous allegations as if set forth in full.

50. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

51. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the Company's financial projections, the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Morgan Stanley, and Morgan Stanley's potential conflicts of interest. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

52. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction or seek to exercise their appraisal rights.

- 14 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

53. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

54. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

55. Plaintiff repeats all previous allegations as if set forth in full.

56. The Individual Defendants acted as controlling persons of Livongo within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Livongo, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

57. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

58. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous

recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

59.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

60.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

61.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Livongo's stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Livongo, and against defendants, as follows:

A.  Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Livongo stockholders;

B.  In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: October 13, 2020

**WEISSLAW LLP**
Joel E. Elkins

By: */s/ Joel E. Elkins*

Joel E. Elkins
9107 Wilshire Blvd., Suite 450
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile: 310/209-2348
　　　　　-and-
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, NY 10036
Telephone: 212/682-3025
Facsimile: 212/682-3010

*Attorneys for Plaintiff*